**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Alfred ST. THOMAS, M.D.,**
**Defendant–Appellant.**

**No. 91–55427.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1992.

Decided June 4, 1992.

Clifton W. Albright, Albright & Single-ton, Los Angeles, Cal., for defendant-appellant.

Michael S. Raab, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before: GOODWIN, NORRIS and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

The United States filed a claim asserting that Robert Alfred St. Thomas was indebted to it in the amount of $163,140.05, representing "Health Education Assistance Loans," as evidenced by an attached "Certificate of Indebtedness." The certificate, signed by a claims agent in the Public Health Service, set forth certain facts as to federal scholarship aid to St. Thomas and his asserted breach of contract in regard to them leading to the alleged indebtedness. St. Thomas denied the debt and urged affirmative defenses including laches and estoppel. The district court gave summary judgment for the United States. We now affirm in part, reverse in part and remand.

*FACTS*

In 1977 St. Thomas was a student of Meharry Medical College in Nashville, Tennessee. On August 11, 1977 he received a scholarship award of $11,181.25 for the period July 1, 1977 to June 30, 1978. The scholarship award was by the Public Health and National Health Service Corps (PH/NHSC) under Public Law 92–585, 86 Stat. 1290–1295 (1972).

St. Thomas signed an agreement accepting the award, one condition of which was that he agreed "to fulfill the service obligation" as specified by the Public Health Service Act and the pertinent regulations. This condition was part of the printed boilerplate in the award and was also separately typed opposite his name. In the boilerplate the following was added:

If for any reason a participant fails to complete an active date service obligation, such participant shall be liable for the payment of an amount equal to the scholarship payment, tuition and other educational fees paid, plus interest at the maximum legal prevailing rate running from the date such payments were made.

It was further stated that this amount should be paid to the United States within a three year period beginning on the date on which a breach occurred.

St. Thomas also received scholarship aid of $6058 for 1978–1979 and $12,671 for 1979–1980 under a different program, the National Health Service Corps Scholarship Program, 42 U.S.C. § 254*l*. In receiving these awards St. Thomas was required to enter into a written contract with the Secretary of Health and Human Services (the Secretary) providing that he would serve a "period of obligated service" for at least two years as a provider of primary health services "in a health professional shortage area (designated under § 254e of this title) to which he is assigned by the Secretary as a member of the Corps". 42 U.S.C. § 254*l*(f). The contract also provided, by statute, a statement of "the damages to which the United States is entitled, under § 254*o* of this title, for the individual's breach of the contract." *Id.*

Section 254*o*, which deals with breach of the contract, provides that if the individual "breaches his written contract by failing (for any reason not specified in subsection (a) of this section or § 254p(d) of this title) either to begin such individual's service obligation ... or to complete such service obligation," the United States will be able to recover three times the amount awarded

plus the interest "which would be payable if at the time the amounts were paid they were loans bearing interest at the maximum legal prevailing rate." 42 U.S.C. § 254o.

"Obligated Service Under Contract" is dealt with under 42 U.S.C. 254m. This statute declares that, except as provided in § 254n, each individual who enters a written contract with the Secretary under § 254l "shall provide service in the full-time clinical practice of such individual's profession as a member of the Corps for the period of obligated service provided in [the] contract." § 254m(a).

The rest of section 254m(a), "Obligated Service Under Contract," specifies what the Secretary shall do as to an individual required to provide obligated service. The Secretary is to determine if the individual shall provide such service as a member of the Corps who is an officer or who is a civilian employee of the United States or as a member of the Corps who is not such an officer or employee. The Secretary is to notify the individual of such determination. The period of obligated service is considered to have begun on the date the individual is appointed as an officer or is designated as a member of the Corps who is not an officer or employee or in the case of an individual who has entered into an agreement with the Secretary under § 254n, on the date specified in such agreement, whichever is earlier. § 254m(c). Importantly for our purposes, the Secretary "shall assign" participants to "health professional shortage areas." 42 U.S.C. §§ 254m(d), 254e(a)(1).

Section 254n, to which reference is made by § 254m(c), provides that the Secretary "shall release" an individual from his service obligation "if the individual applies for such a release under this section and enters into a written agreement with the Secretary" that the individual will serve in full-time private clinical practice in a health professional shortage area selected by the Secretary. § 254n(a).

By letter dated October 23, 1981 St. Thomas was notified that he had been assigned to a position at the Federal Bureau of Prisons to fulfill his service obligation. Because of budget reductions, however, this position became unavailable, and he was informed by letter of December 28, 1981 that he was now reassigned either to the National Health Service Corps or to the Indian Health Service. On March 3, 1982 St. Thomas was notified by letter from the regional office of the Secretary that he had been "assigned to the National Health Service Corps," Region IX, and might now begin the process of identifying a federal or non-federal position in which to fulfill his service obligation. The same notice "strongly encouraged" him to investigate the possibility of serving his obligation "in a private practice status" in the assigned region. He was instructed to contact the regional staff of the Secretary in San Francisco for assistance in matching to a site. He was advised that if he did not match to a site by May 4, 1982 he would be assigned to a site.

St. Thomas was not matched to a site by May 4, 1982. No assignment was made. Late in May 1982 the regional office asked him by mailgram to contact the office about his placement plans. On June 11, 1982 he informed the regional office by telephone that he had been offered a position in a clinic in Watts. The regional office sent him an application for a Private Placement Option (PPO). He did not return it. The regional office advised him on July 1, 1982 that he "would be recommended for default." He was so recommended to the central office of the Secretary, and on September 15, 1982 he was informed that he was in default, effective August 6, 1982.

On October 28, 1982 St. Thomas telephoned the regional office saying he was employed at a clinic in Watts but had misplaced his PPO application. In early November 1982 he did file a PPO application, which was incomplete. His employment in Watts was terminated on November 30, 1982. St. Thomas' subsequent employment appears to be unrelated to this case.

In 1986 a collection agency on behalf of the Secretary offered St. Thomas an agreement by which he could satisfy the mone-

tary obligation caused by the alleged default by serving at a high priority site selected by the Secretary. He did not reply. He was again advised in 1988 that he could serve under a "special repayment program." He again did not reply.

### PROCEEDINGS

The government filed its complaint in this case March 28, 1990. The government calculated St. Thomas' liability as of February 29, 1988 to be principal of $11,181.25 and interest of $16,936.67 under the Public Health Scholarship Program. In addition, the government calculated that he was liable under the National Health Service Corps Program for principal of $56,187 and interest of $68,997.57.

On February 11, 1991 the United States moved for summary judgment, which was granted the same day on the basis of "uncontroverted facts and conclusions of law." The uncontroverted facts include the facts summarized above. By February 11, 1991, St. Thomas' liability was calculated to amount to $211,908.38, with interest accruing daily until entry of judgment.

### ANALYSIS

■ Under the Public Health Service Scholarship Training Program St. Thomas had both a statutory and contractual obligation to pay an amount equal to the scholarship payments plus interest if "for any reason" he failed to complete his active duty service application. 86 Stat. 1294. St. Thomas failed to complete his active duty obligation. He is liable under the statute and under the contract that he signed for the principal and interest set by law.

■ St. Thomas' position under the National Health Service Corps program is somewhat different. The provision governing transition between the two scholarship programs, Section 408(b)(2) of the Health Professions Education Assistance Act of 1976, P.L. 94–484, does not import into the earlier program the requirement of assignment to be analyzed below.

By statute and contract St. Thomas had an obligation to provide two additional years of service. How he was to perform the service was governed by statute. What he did in no way qualified under § 254n because he never entered into a written agreement with the Secretary to perform his service in private clinical practice in a health professional shortage area. His obligations, therefore, must be measured under § 254m.

Section 254m(d) requires the Secretary to assign participants to a health manpower shortage area for service obligations under National Health Service Corps scholarships. The Secretary never assigned St. Thomas to a health manpower shortage area. Even if it might otherwise have sufficed, the assignment to the Bureau of Prisons did not satisfy the statutory duty because it was revoked. Nor did the Secretary ever assign St. Thomas to the Indian Health Service; the December 28 letter stated that it and the NHSC were alternatives. Finally, the assignment of St. Thomas to the National Health Service Corps, Region IX, did not satisfy the assignment requirement. An "area" is a small geographic area such as one part of a city; a population group; or a specific facility. 42 U.S.C. § 254e(a)(1). The three-state Region IX did not qualify. The United States does not argue that any of these assignments sufficed. St. Thomas did not match to a site and obviate the need for the Secretary's assigning him to a health manpower shortage area.

The communications between St. Thomas and the Secretary after May 4, 1982 show St. Thomas procrastinating in his commitment to obligated service, but the communications also show the Secretary to be sloppy in his procedures and failing to make a definite assignment of St. Thomas. At no point did St. Thomas reject an assignment made by the Secretary. Consequently, there was no basis for the Secretary to find him in breach of his obligation as of August 8, 1982.

In the Secretary's defense, it might be argued that the Secretary was trying to act in a mature and civilized way with a health professional and that St. Thomas' half-promises led the Secretary to think that St.

Thomas would eventually file a PPO. However, St. Thomas did not enter into the agreement required for a PPO under § 254n. There was, therefore, no reason for the Secretary to suppose that St. Thomas fell under § 254n. The Secretary was required to act under § 254m.

The Secretary administers a statute with specific provisions with a suggestion of almost military precision in the concept of "a corps." The penalty for a physician in breach of the obligated service requirement is a heavy one, far exceeding the actual monetary loss to the United States. The United States expects its beneficiaries to turn square corners in dealing with it. Similarly, the United States is required to turn square corners in dealing with its beneficiaries. The Secretary failed to take the steps necessary to put St. Thomas into default.

Accordingly, the judgment of the district court is AFFIRMED as to the amount due under the Public Health Service Training Program and is REVERSED as to the amount due under the National Health Service Corps program. The case is REMANDED for entry of judgment in accordance with this opinion.