UNITED STATES of America, Plaintiff,

v.

James J. LEDWITH, Jr., Defendant.

No. 3:92–CV–390.

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 5, 1992.

Nicholas Stephan Altimari, U.S. Attorney's Office, Richmond, Va., for plaintiff.

Wayne Lee Emery, Warsaw, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on the Plaintiff's motion for summary judgment and the Defendant's cross motions for summary judgment.

The relevant facts surrounding this case are undisputed. James J. Ledwith, Jr. attended medical school at the Medical College of Virginia ("MCV") during the years 1979–1983. He applied for a National Health Service Corps Scholarship during the Spring of his first year and was awarded a scholarship for tuition, fees, stipend and other costs for the academic years 1980–81 and 1981–82. The Defendant received a total of $20,758 from this scholarship.

The National Health Service Corps ("NHSC") Scholarship Program provides medical students with financial assistance while enrolled in medical school in exchange for their service in a designated Health Manpower Shortage Area ("HMSA") following graduation. Students accepted into the program enter into a written scholarship contract, the terms of which are established by statute. 42 U.S.C. § 254$l$(b)–(g). A principal element of this contract requires the student to agree to serve for the applicable period in a health manpower shortage area. 42 U.S.C. § 254$l$(b)(4). If the scholar fails to perform the service obligation for any reason, that student becomes liable for liquidated damages equal to three times the amount of the total scholarship award plus interest at the maximum legal rate. 42 U.S.C. § 254$o$(b)(1).

Following graduation from medical school in 1983, Defendant's service obligation was deferred for three years to enable him to complete a post-graduate residency. Upon completion of his residency, and in exchange for having received financial assistance, the Defendant was required to begin two years of service on July 1, 1986.

The normal assignment for service of medical school graduates is a three phase process. Since there are usually more HMSA's than scholars, each year the Secretary compiles a list of the highest priority sites known as the HMSA Placement Opportunity List ("HPOL"). In 1985–86, the year in question, the first phase (the Early Decision Alternative) ran from July 1 to October 31, 1985. During this phase all scholars were free to compete for all sites in their specialty on the HPOL nationwide.

During the second phase, scholars who did not locate a position during the Early Decision Alternative phase were then assigned to a specific state, region, the Bureau of Prisons, or the Indian Health Service. Although these scholars were assigned to the specific area, they were still free to compete for any HPOL position within their assigned area until April 15, 1986. Any scholar still unmatched by April 15 was to finally have been assigned by the Secretary to a specific site in order for the doctor to fulfill his obligation.

The Defendant was not successful in finding placement during phase one and was subsequently assigned to the Indian Health Services. In letters dated March 13, 1986 and April 13, 1986, the Defendant notified the Director of the NHSC as well as the Chief of the Manpower Support Branch of the Indian Health Services that he would not accept a position in the Indian Health Services. Consequently, on June 12, 1986, the Defendant was notified that as of July 1, 1986, he would be considered in default of his NHSC Scholarship if he indeed failed to begin his service obligation as he asserted in his letters.

In June of 1986, Defendant notified the NHSC that he did not wish to be considered in default of his scholarship. In July the NHSC responded by informing the Defendant that they were still interested in his service and that if he would execute a Forbearance Agreement and serve his required two years, his debt would be discharged. The Defendant agreed to execute the Forbearance Agreement, but only if the NHSC agreed to limit his service to sites within 60 miles of Tappahannock, Va. The NHSC found this restriction unacceptable and again found the Defendant in default.

In December of 1987, Congress enacted a special repayment plan for NHSC scholars in default which provided an option for service equal to 150 percent of their service obligation at a site on the Supplemental HMSA Placement Opportunity List ("SHPOL"). The Defendant exercised this option to repay his scholarship by signing an agreement on May 28, 1988. The Defendant, however, failed to match a service site before the deadline and was once again placed on default status. On June 23, 1989, the Defendant was offered one final opportunity to execute a Forbearance Agreement in lieu of repaying his debt monetarily. The Defendant did not accept this offer.

■ Federal Rule of Civil Procedure 56 governs motions for summary judgment. Pursuant to Rule 56, summary judgment is appropriate only where parties do not dispute material facts that might affect the outcome of an action. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To defeat summary judgment, a nonmoving party, who will bear the burden of proof at trial on a dispositive issue, must go beyond his or her pleadings with affidavits, depositions, interrogatories or other admissible evidence to show specific facts that amount to a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1985). Where the parties show no dispute of material fact, summary judgment is appropriate. In the present case, the facts are not in dispute, however, both parties offer a different interpretation.

The Government's position is straight forward. They claim that the Defendant entered into a binding agreement with the Department of Health and Human Services whereby the Defendant would receive a NHSC Scholarship for tuition, fees, stipend and other costs. In return, the Defendant agreed to serve in a health manpower shortage area for the obligated period or pay liquidated damages. The Government further contends that the Secretary reasonably declared the Defendant in default and that this decision must be upheld by this Court unless the action was "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." *United States v. Hatcher*, 922 F.2d 1402, 1407 (9th Cir.1991).

■ The Defendant asserts two affirmative defenses. The Defendant claims he was deprived of his due process by the Secretary. First, the Defendant claims the Secretary deprived him of due process

when he declared the Defendant in default without assigning him to a final site. This theory is not based on a standard of law, and it is illogical in that it would require the Secretary to make a specific assignment in disregard of the two letters from the Defendant expressing his unwillingness to serve. It would complicate the Secretary's ability to make assignment decisions and possibly prevent the assignment of another physician to a needy site. This argument contradicts the recent opinion from the Ninth Circuit Court of Appeals in *United States v. St. Thomas*, 966 F.2d 476 (9th Cir.1992), which noted, although in dicta, that an assignment to the Bureau of Prisons or the Indian Health Service would fulfil the particularity requirement. The Defendant's position also disregards the subsequent attempts by the Secretary to convince the Defendant to repay his debt by performing his service. Despite all these attempts, the Defendant remains in default.

■ The Defendant also claims a deprivation of due process in that his service obligation allegedly did not receive serious consideration for a hardship waiver. Nothing in the record supports this bare allegation.

Both the U.S. Code and the scholarship agreement give the Secretary the authority to suspend or to waive a scholar's service obligation in cases that involve extreme hardship. On two occasions the Defendant requested that his obligation be considered for such a waiver. This waiver, which is completely left to the Secretary's discretion, was never granted, and according to the Defendant, again without evidentiary support, was never seriously considered. The Defendant claims his situation merited a hardship waiver because his wife, a licensed orthodontist, could not practice her specialty if he served in the Indian Health Service. Although the Defendant is still arguing the merits of his hardship requests, he fails to provide any standard as to the review for hardship requests that the Secretary allegedly violated. It appears that this type of waiver is completely discretionary.

■ The Defendant's second defense relies on the common law contract principle of estoppel. The Defendant claims that the following statements were made to him by recruiters prior to his signing the scholarship agreement:

1.) That there would not be involuntary assignment to the Indian Health Service;

2.) That a spouse's professional needs would be taken into consideration when determining assignments for scholars;

3.) That placement in the service would be a three phase process, the last phase being the assignment to a specific service facility; and

4.) That the list of facilities included in the third, forced-match phase, would be drawn from all currently available sites.

Before the doctrine of estoppel may be raised against the government, the party asserting estoppel must first establish an affirmative act of misconduct by an agent of the government beyond mere negligence. *United States v. Hatcher*, 922 F.2d 1402 (9th Cir.1991). The Defendant must also establish that the government official making the statements were authorized to do so. The government is not bound by unauthorized acts of its agents. *Saulque v. United States*, 663 F.2d 968 (9th Cir. 1981). In the present case, the Defendant has only recently attempted to use a supplemental affidavit to identify the party or parties he claims disseminated the information on the scholarship program that was contrary to the language in the scholarship agreement. The Defendant does not attempt to argue, nor could he, that the government agent had any authority to make the contradictory statements.

Even if the Defendant stated a sufficient claim of estoppel, there is some question as to whether common law contract principles govern NHSC scholarships. Although this issue has not been addressed by the Fourth Circuit, the Ninth Circuit has held on two occasions that the Secretary's obligations in NHSC scholarships are derived from the statute and not from contract principles. *United States v. Hatcher*, 922 F.2d 1402

(9th Cir.1991); *Rendleman v. Bowen,* 860 F.2d 1537 (9th Cir.1988).

 As stated above, the parties have not established a disputed issue of material fact. For this reason summary judgment for one of the parties is appropriate. To decide this question, the following two issues must be resolved:

1.) whether the government has established a binding agreement between the NHSC and the Defendant obligating the Defendant to perform the required services or pay liquidated damages; and

2.) if such a binding agreement existed, whether the Defendant has established an affirmative defense that will relieve his obligation.

There is no legitimate dispute that the Defendant accepted the NHSC scholarship with the knowledge that he was obligated to repay the debt with services or liquidated damages. Although the Defendant may not have fully appreciated the significance of being assigned to the Indian Health Services, this possibility was never concealed by the NHSC. The NHSC does not have to waive his obligation simply because the Defendant subsequently chose to marry an orthodontist that can not practice in the jurisdictions of the Indian Health Services. Even if this were the case, the Defendant failed to take advantage of the opportunity presented to him in May of 1988 to perform service at a site on the NHSC Supplemental HMSA Placement Opportunity List.

For these reasons, the Plaintiff's motion for summary judgment will be Granted, and the Defendant's cross motion will be Denied.

The parties were given the opportunity to submit post-hearing affidavits as to the amount of potential damages. Since the Defendant did not respond or object to the Government's calculation of damages, the Court concludes that the amount is undisputed. The judgment against the Defendant, based on the Plaintiff's affidavit as to updated damages, is $62,274.00 principal, plus $125,684.31 interest, or a total of $187,958.31.